# NATIONAL LABOR RELATIONS BOARD *v.* COCA-COLA BOTTLING CO. OF LOUISVILLE, INC.

No. 79.  Argued January 17, 1956.—Decided February 27, 1956.

*David P. Findling* argued the cause for petitioner. With him on the brief were *Solicitor General Sobeloff, Theophil C. Kammholz, Dominick L. Manoli* and *Samuel M. Singer.*

*John K. Skaggs, Jr.* argued the cause for respondent. With him on the brief was *James E. Fahey.*

*Arthur J. Goldberg* argued the cause for the American Federation of Labor and Congress of Industrial Organizations, as *amicus curiae,* urging reversal. With him on the brief were *J. Albert Woll* and *Thomas E. Harris.*

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

Charging respondent with coercion of its employees and discrimination against pro-union employees, Local 20 of the United Brewery Workers, CIO, instituted proceedings before the National Labor Relations Board for violation of §§ 8 (a)(1) and 8 (a)(3) of the National Labor Relations Act, as amended, 61 Stat. 136, 140, 65 Stat. 601, 602, which outlaw such unfair labor practices. Pursuant to this charge, a complaint was issued; at the hearing which followed, respondent challenged the jurisdiction of the Board upon the ground that the union had not satisfied the requirements of § 9 (h) of the Act. Section 9 (h) provides that "no complaint shall be issued pursuant to [an unfair labor practice] charge made by a labor organization . . . unless there is on file with the Board an affidavit executed contemporaneously or within the preceding twelve-month period by each officer of such labor organization and the officers of any national or international labor organization of which it is an affiliate or constituent unit that he is not a member of the Communist Party or affiliated with such party, and that he does not believe in, and is not a member of or supports any organization that believes in or teaches, the overthrow of the United States Government by force or by any illegal or unconstitutional methods." Respondent offered to prove, by evidence of his duties and functions, that Taylor, the Regional Director of the CIO for Kentucky, who admittedly had not filed a non-Communist affidavit, was an "officer" within the meaning of § 9 (h).

The Board rejected this contention on two grounds: First, "the compliance status of a union . . . is a matter for administrative determination, and not one to be litigated in complaint or representation proceedings." 108 N. L. R. B. 490, 491. Second, "had the Respondent established in a collateral proceeding what it had offered to prove at the hearing herein, we are satisfied, and find, that under the Board's present 'constitutional' test, such proof would fall short of substantiating the Respondent's contention that Taylor was an officer of the CIO." 108 N. L. R. B. 490, 492–493.

On the merits, the Board found that respondent had committed the unfair practices charged. When the Board sought enforcement of its decree, the Court of Appeals for the Sixth Circuit, without passing upon the unfair practices, remanded the case to the Board for determination of the issue tendered by respondent in its claim that Taylor's functions constituted him an "officer." 219 F. 2d 441. We granted certiorari because of the importance of the questions raised in the administration of the statute. 350 U. S. 819.

These questions are two in number: (1) May an employer, during the course of an unfair labor practice hearing, show that a labor organization has not complied with § 9 (h) and thereby establish the Board's want of jurisdiction? (2) Assuming the answer to this question is "yes," is the Board's construction of "officer" in § 9 (h)— *viz.*, "any person occupying a position identified as an office in the constitution of the labor organization"— proper? 29 CFR, 1955 Supp., § 102.13.*

---

*The only qualification to this practically automatic definition of who is or is not an officer is the following provision of § 102.13 (b) (3) of the Board's Rules and Regulations:

". . . where the Board has reasonable cause to believe that a labor organization has omitted from its constitution the designation of any position as an office for the purpose of evading or circumventing

The Court of Appeals answered the first question in the affirmative upon the authority of *Labor Board* v. *Highland Park Manufacturing Co.*, 341 U. S. 322. In that case an employer, defendant in an unfair labor practice suit, challenged the Board's interpretation of "national or international labor organization" in § 9 (h). The agency had read this language as not including labor federations, *i. e.*, the AFL or CIO. Therefore, it had not required affidavits from officers of these federations. Highland Park's challenge was rejected by the Board under its then settled policy that the employer could not raise noncompliance with § 9 (h) as a bar to a proceeding on an unfair labor practice. The Court of Appeals held to the contrary, 184 F. 2d 98, and we affirmed its decision.

The Board distinguishes *Highland Park* by suggesting that here the "employer seeks to question only the *fact* of compliance, as distinguished from the *necessity* of compliance." The genesis of this distinction comes from the following in *Highland Park:* "If there were dispute as to whether the C. I. O. had filed the required affidavits or whether documents filed met the statutory requirements and the Board had resolved that question in favor of the labor organizations, a different question would be presented." 341 U. S. 322, 325. The Board misconceives the significance of the passage. Both *Highland Park* and this case involve the scope of § 9 (h), the meaning to

the filing requirements of section 9 (h) of the act, the Board may, upon appropriate notice, conduct an investigation to determine the facts in that regard, and where the facts appear to warrant such action the Board may require affidavits from persons other than incumbents of positions identified by the constitution as offices before the labor organization will be recognized as having complied with section 9 (h) of the act." 29 CFR, 1955 Supp., § 102.13 (b) (3).

We interpret this to mean that the application of this exception is wholly within the Board's control and cannot be litigated in an unfair labor practice proceeding.

be derived from its language; neither case involves an inquiry into disputed facts, the situation referred to in *Highland Park*. Acceptance of a differentiation between these cases upon any such theory as that suggested by the Board would make of law too thin a dialectic enterprise.

But if the Board's distinction is overly subtle, its reason for attempting a distinction has force, namely, a concern with "the need to expedite the hearing of cases and the resolution of issues on their merits . . . ." 108 N. L. R. B. 490, 491. Much may be said for the claim that an employer should not be permitted to disrupt or delay complaint or representation cases by raising questions respecting § 9 (h). But after *Highland Park* the argument comes too late.

In any event, whether the impediment to the effectiveness of the administrative process in determining the merits of a charge of unfair labor practice may be serious or negligible by injecting into it the subsidiary issue of compliance with § 9 (h), depends upon the scope of the inquiry opened up by the latter issue. This brings us to that question. Our concern specifically is with the appropriate construction of "officers" in § 9 (h). The Court of Appeals rejected the Board's "constitutional" rule for determining who is a union "officer" in favor of a so-called "functional" test. Presumably this test would require those members of a union who are effective instruments of its policies to file affidavits as "officers," regardless of the fact that they do not fill the offices designated by their organization's constitution.

Neither § 9 (h) itself nor its legislative history attempts a definition of "officers." "Officers" is a word of familiar usage and "[a]fter all, legislation when not expressed in technical terms is addressed to the common run of men and is therefore to be understood according to the sense of the thing, as the ordinary man has a right to rely on ordinary words addressed to him." *Addison* v.

*Holly Hill Co.,* 322 U. S. 607, 618. "Officers" normally means those who hold defined offices. It does not mean the boys in the back room or other agencies of invisible government, whether in politics or in the trade-union movement. A definition of officer as "any person occupying a position identified as an office in the constitution of the labor organization" accords with this lay understanding. 29 CFR, 1955 Supp., § 102.13.

But if the word be deemed to have a peculiar connotation for those intimate with trade-union affairs, it is incumbent upon us to give the word its technical meaning, *Boston Sand Co.* v. *United States,* 278 U. S. 41, 48, for § 9 (h) is an integral part of a statute whose sponsors were familiar with labor organization and labor problems and which was doubtless drawn by specialists in labor relations. If such be the case, then of course the Board's expertness comes into play. We should affirm its definition if that definition does not appear too farfetched, *Labor Board* v. *Hearst Publications, Inc.,* 322 U. S. 111, 130. The statute provides some evidence to support the Board, for § 9 (f), which requires unions to report specific information to the Secretary of Labor, differentiates between "officers" and "agents" of labor organizations.

We conclude that the Board's criterion for determining who are officers both accords with the lay definition of the word and is a reasonable, if indeed not a compelling, construction of the statute. Accordingly, the judgment of the Court of Appeals is reversed and the case is remanded to that court for further proceedings.

*Reversed and remanded.*

MR. JUSTICE HARLAN took no part in the consideration or decision of this case.