**GOODMAN MANUFACTURING COM-PANY, an Illinois corporation, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 11403.**

United States Court of Appeals Seventh Circuit.

June 15, 1956.

Edward S. Stern, Chicago, Ill., for petitioner.

David B. Rothstein, Chicago, Ill., for intervenor.

David P. Findling, Associate General Counsel, Samuel M. Singer, Attorney, N. L. R. B., Washington, D. C., for respondent.

Before MAJOR, LINDLEY and SCHNACKENBERG, Circuit Judges.

MAJOR, Circuit Judge.

This is a petition to review and set aside an order of the National Labor Relations Board (respondent), entered January 28, 1955, against Goodman Manufacturing Company of Chicago, Illinois (petitioner). By the Board's order petitioner was found guilty of an unfair labor practice, in violation of Section 8 (a) (5) and (1) of the National Labor Relations Act, 29 U.S.C.A. § 158(a) (5) and (1), because of its refusal to bargain with United Electrical Radio and Machine Workers of America (hereinafter referred to as the International Union) as exclusive representative of certain of petitioner's employees in a unit which the Board had determined to be appropriate. Petitioner was ordered to cease and desist from such unfair labor practice and to take the customary affirmative steps to give effect to the Board's order. By answer the Board requests enforcement of its order.

The employees in dispute and about whom the controversy on the merits revolves are certain timekeepers employed by petitioner. Throughout these proceedings petitioner has sought to justify its refusal to bargain on two grounds: (1) that such timekeepers were improperly placed in a bargaining unit with certain production and maintenance workers, and (2) that the International Union was not in compliance with Section 9(h) of the National Labor Relations Act, 29 U.S.C.A. § 159(h).

The unfair labor practice charge upon which the complaint issued was filed by Local 1150, United Electrical Radio and Machine Workers of America (hereinafter referred to as the Local Union) on November 19, 1952. The factual situation is somewhat confused because there are affiliated with the International Union geographical district organizations (District 11 is here involved), each of which has a governing body known as the District Council (District Council 11 is here involved), together with Local Unions which receive their authority either from the appropriate District Council or the International Union, or both. In addition to petitioner's contention that the unit determined by the Board was not appropriate and that the International was not in compliance with Sec. 9(h), it contends that District Council 11 was a labor organization within the terms of the Act and that it also was not in compliance. This latter contention, as well as the others, was decided by the Board adversely to petitioner.

It now appears definitely settled that non-compliance with Sec. 9(h) may in an appropriate case be raised as a defense to an unfair labor practice complaint and that when so raised it is jurisdictional. N. L. R. B. v. Highland Park Mfg. Co., 341 U.S. 322, 325, 71 S.Ct. 758, 95 L.Ed. 969; N. L. R. B. v. Dant, 344 U.S. 375, 73 S.Ct. 375, 97 L.Ed. 407; N. L. R. B. v. Atlanta Metallic Casket Co., 5 Cir., 205 F.2d 931. Thus we need not be concerned with other defenses raised by petitioner until and unless this jurisdictional issue is decided adversely to it.

This court, on November 10, 1955, rendered an opinion in which it held that the International Union was not in compliance with Sec. 9(h), which resulted in a judgment setting aside and vacating the order under attack and, consequently, a denial of the Board's request for enforcement. At the time of our decision there was pending before the Supreme Court the case of N. L. R. B. v. Coca-Cola

Bottling Co. of Louisville, on the issue of non-compliance, on certiorari from the Court of Appeals of the Sixth Circuit, which had decided the issue adversely to the Board, 219 F.2d 441. The Supreme Court, on February 27, 1956, rendered its opinion reversing the decision of the Court of Appeals, N. L. R. B. v. Coca-Cola Bottling Co. of Louisville, 350 U.S. 264, 76 S.Ct. 383. On March 3, 1956, the Board, contending that our decision was in conflict with that of the Supreme Court, filed its motion to vacate our judgment and to reinstate the case for further consideration. Over petitioner's contrary contention, the Board's motion was allowed. At the same time a motion by International and Local Union 1114 (successor to Local Union 1150) to become a party to the proceeding by intervention was denied. The International and the Local Unions were granted leave, however, to appear as *amicus curiae* in any subsequent proceeding. All parties, including the Unions as *amicus curiae*, have filed briefs and participated in oral argument confined to the question as to the impact, if any, which the Supreme Court decision had upon our decision.

█ The controversy as it relates to the issue of non-compliance revolves around the "trustees" and "secretaries" of the International Union. Petitioner contends that they are officers of such Union and required under Sec. 9(h) to file the non-communistic affidavit, while the Board and the Unions assert to the contrary. Notwithstanding that all parties profess to discern support in the Supreme Court decision for their respective positions, all must agree that two questions were decided by the Supreme Court, (1) that an employer may under some circumstances challenge in an unfair labor practice proceeding the determination of the Board that a labor organization is not in compliance with Sec. 9(h) of the Act, and (2) that the Board's definition of the term "officer" as set forth in Sec. 102.13(b) (3) of the Board's rules and regulations is a valid definition of that term within the provisions of the

Act. The decision that an employer can question the necessity of compliance was a reiteration of the Court's previous holding in N. L. R. B. v. Highland Park Mfg. Co., 341 U.S. 322, 71 S.Ct. 758, 95 L.Ed. 969.

There is no dispute as to the facts in the instant situation and under the decision of the Supreme Court in the Coca-Cola case there remains for decision the sole question as to whether the "trustees" and "secretaries" of the International Union were officers. This much is conceded by the Board and the Unions. The Board's regulation, approved by the Supreme Court, provides so far as here material, "The term 'officer' * * * shall mean any person occupying a position identified as an office in the constitution of the labor organization * * *." This brings us to the question as to whether "trustees" and "secretaries" occupy positions "identified" as an office in the constitution of the International Union.

The important provision in International's constitution is Article 5, which is as follows:

"Section A. The Officers of the United Electrical, Radio and Machine Workers of America (UE) shall be General President, General Secretary-Treasurer, Director of Organization, and a General Vice-President for each geographical district so agreed upon.

"A General Executive Board shall be composed of the General President, General Secretary-Treasurer, Director of Organization and all General Vice-Presidents and District Secretaries who are designated by the respective geographical Districts. Three Trustees and one Alternate shall also be elected.

"Section B. The General Officers and Trustees, with the exception of the Sergeant-at-Arms, shall be nominated and elected by the International Convention. Nominees shall be good standing members of this union for one year or longer.

"Section C. The terms of the General Officers and General Vice-Presidents shall end October 31st, and the Trustees and the General Executive Board shall have all records of the convention in order that the business of the Union shall function in an orderly manner from November 1st."

■ The Board and the Unions contend that in ascertaining the persons "occupying a position identified as an office," only the first paragraph of Section A is relevant, in other words, that we must close our eyes to all other provisions, not only those contained in Article 5 but in other articles of the constitution. With this contention we do not agree. It is true, of course, that "trustees" and "secretaries" are not specifically designated as officers, but it is provided that "trustees" shall be nominated and elected by the International convention, and that "secretaries," in addition to other designated officials, are members of International's Executive Board. The Supreme Court in the Coca-Cola case stated, 350 U.S. at page 269, 76 S.Ct. at page 386, "'Officers' normally means those who hold defined offices." Obviously this definition does not purport to be exclusive but, even if it did, it is our view that "trustees" and "secretaries" hold an identified office. Certainly, to use the Supreme Court's illustration, they are not "boys in the back room or other agencies of invisible government." The Board's regulation does not require that the position occupied be specifically designated or named as an office but only that it be identified as such, which carries a broader meaning.

The specific requirement contained in Article 5, that the "trustees" be nominated and elected by the International convention at the same time and in the same manner that those designated as General Officers are elected, carries a strong connotation that the "trustees" are to be elected to an office. More than that, by Article 5 "secretaries" the same as other General Officers are specifically designated as members of the Executive Board of the International Union. In our view, the most favorable appraisement which can be made of Article 5 from the standpoint of the Board and the Unions is that it is capable of raising a doubt as to whether the positions of "trustees" and "secretaries" are "identified as an office." More specifically, the Article as it relates to the issue under discussion is ambiguous.

■ Such being the situation, we think it proper to resort to other provisions of the constitution for the purpose of ascertaining the official authority or power bestowed upon "secretaries" and "trustees." See American Communications Ass'n, C.I.O. v. Douds, 339 U.S. 382, 407–418, 70 S.Ct. 674, 94 L.Ed. 925. Also, we think that the recognition accorded "secretaries" and "trustees" by the International Union is relevant.

Article 9 of the constitution provides:

"* * * The duties of the Trustees shall be to audit all books and records of the International Office quarterly, or by order of the General Executive Board; to take inventory at least once a year, and safeguard all the properties of the Union and make their report at the convention. * * *"

The "trustees" act as administrators of the procedure for the recall of General Officers of the International Union. This procedure is set forth in Article 11 of its constitution. In the proceedings of the 1951 convention of the International Union, "trustees" were recognized as officers and elected by ballot, as were all other officers. The President of the International Union on the floor of the convention stated that the meeting was open for nominations for "the office of trustee." The International Union evidently regarded Article 5 of its constitution as ambiguous because at its 1952 convention it was amended. The explanation for the amendment, as made by the chairman of the constitution revision committee, was as follows, "The reason for this is that in Article 5 all of the officers are jumbled to-

gether and they are picked up again in a series of articles later on, and the attempt is to deal with the general officers in one section and their duties, to deal with the General Executive Board, General Vice-Presidents and their duties, and thirdly to deal with the Trustees and their duties into three separate items that now contain reference to those provisions. * * * " We agree with the statement, "in Article 5 all of the officers are jumbled together." More than that, this statement appears to be a clear recognition that "trustees" were regarded as officers and that a distinction was made between General Officers and other officers, including "trustees," all referred to in Article 5.

Article 10 of the constitution in great detail sets forth the powers and duties of the General Executive Board. Such powers, as might be expected, relate to every facet of management and control of the International Union as well as its affiliated District Councils and Local Unions. Its power and authority encompass both the policy making and administrative fields. The constitution provides for 27 members of the Executive Board, of whom 12 are District Secretaries. Thus it is evident that "secretaries" as members of this Executive Board are in a position to wield much influence in the formation as well as in the execution of Union policy at its highest level. A "secretary" has the same power in this top policy making group of International as its President, Vice-President or any other official. The powers and duties conferred by the constitution upon "secretaries" and "trustees," together with the character of recognition given them by the International Union, strongly support the conclusion that they under Article 5 of the constitution hold a position "identified as an office."

We are aware, of course, that in the Coca-Cola case the employer offered proof as to the duties and functions of a certain person for the purpose of showing that he was an officer of the Union. The Board refused to consider such testimony and for that reason the case was reversed by the Court of Appeals. The Supreme Court sustained the Board's position on this point, referring to the proffered testimony as embodying a "functional test" which it held improper at page 268 of 350 U.S., at page 385 of 76 S.Ct. We are not here concerned with the performance of duties and functions but with the power of those asserted to be officers as fixed in the constitution of the International Union, together with the recognition accorded by the International Union itself to those asserted to be officers. It also may be noted that a reading of the opinion of the Supreme Court and that of the Court of Appeals fails to disclose that the alleged officer or the office which he was alleged to hold was named in the Union constitution there under consideration, while here "trustees" and "secretaries" are named. In any event, the situation here is distinguishable from that before the court in the Coca-Cola case.

█ It is, therefore, our view that the decision of the Supreme Court in Coca-Cola does not impair the result which we reached in our previous opinion rendered November 10, 1955. That opinion, however, is ordered to be withdrawn and this opinion substituted therefor. We reiterate our previous holding that the "secretaries" and "trustees" of the International Union are officers within the scope and intendment of Sec. 9(h) of the Act, as well as the Board's regulation. Admittedly, such officers filed no affidavit and the International Union was not in compliance. It follows that the petition to review, set aside and vacate the order under review is allowed, and that the Board's request for its enforcement is denied.